NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0255n.06

Case No. 20-6006

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>
ESTATE OF BEUNOS LEE ERWIN, by and<br>
through Administrator ad Litem Cody Lynn<br>
Erwin,<br><br>
    Plaintiff-Appellant,<br><br>
v.<br><br>
GREENE COUNTY, TENNESSEE; MICHAEL<br>
JONES,<br><br>
    Defendants-Appellees.
</td>
<td>
)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)
</td>
<td>
<strong>FILED</strong><br>
May 26, 2021<br>
DEBORAH S. HUNT, Clerk<br><br>
ON APPEAL FROM THE<br>
UNITED STATES DISTRICT<br>
COURT FOR THE EASTERN<br>
DISTRICT OF TENNESSEE<br><br>
O P I N I O N
</td>
</tr>
</table>

BEFORE:　　COLE, CLAY, and GRIFFIN, Circuit Judges.

COLE, Circuit Judge. Plaintiff, the estate of Beunos Erwin (the "Estate"), appeals the district court's grant of summary judgment in favor of defendants Greene County, Tennessee, and Lt. Michael Jones of the county sheriff's department on the Estate's federal and state-law claims for excessive force, false imprisonment, assault, and negligence. The claims all stem from Lt. Jones' tasing of Ms. Erwin during a late-night wellness check. For the following reasons, we affirm the judgment of the district court.

I.

In the years preceding her death, Beunos Erwin lived with her son, Cody Erwin, in two residences next door to each other in Greene County, Tennessee. Shortly after midnight on

September 24, 2017, Mr. Erwin called the Greene County Sheriff's dispatch to request assistance with his then-81-year-old mother, who was upset and combative. Mr. Erwin told dispatch that he did not know what to do with his mother, who was running in and out of their house, beating their car and the basement door with a broom, and yelling at imaginary intruders to get off their property. He also explained that his mother had threatened to kill him and assaulted him previously during similar episodes.

When county emergency medical technicians and police officers, including defendant Lt. Michael Jones, arrived on the scene, they found Ms. Erwin lucid and pleasant. But soon after the responders left, Mr. Erwin heard his mother yelling at imagined intruders again, and he called police a second time. Lt. Jones was again dispatched to the scene, with two other officers. Upon exiting his vehicle Lt. Jones could not locate Ms. Erwin, and Mr. Erwin was still inside the house.

Soon thereafter, Lt. Jones saw Ms. Erwin walking from one of their residences, along a path coming towards the road where he had parked his vehicle. When Ms. Erwin was still about 25 feet away, Lt. Jones shined his flashlight on her and noticed that she was carrying a bow rake, or garden rake, with rigid metal tines designed to break up compacted soil. Lt. Jones perceived that Ms. Erwin had an "offensive posture" with the rake, concluding that it was "being prepared to [be] use[d] as a weapon." (Defs.'s Excerpts of Depo. of Michael Jones ("Jones Depo."), R. 35-6, PageID 151.) As she advanced, Ms. Erwin yelled at Lt. Jones, "Get off my land!" and "You hear me . . . get out of here!" (Ex. A to Defs.'s Mot. for Summ. J. (Jones Dashcam Video), R. 38, at 1:50–1:56.) Lt. Jones answered, "You better stop," and Ms. Erwin responded, "No, I'm not gonna stop. I'm not gonna stop." (*Id.* at 1:58–2:02.) Very shortly after, when Ms. Erwin was around ten to twelve feet from Lt. Jones and essentially in the road, he deployed his taser against her. Mr. Erwin had emerged from the other residence just seconds before. He recalled seeing his

mother "brandishing the rake" as she advanced towards Lt. Jones and that she only stopped upon being tased. (Defs.'s Excerpts of Depo. of Cody Erwin ("Erwin Depo."), R. 35-5, PageID 130–31, 136.)

In September 2018, Ms. Erwin filed this lawsuit against Lt. Jones and Greene County in the U.S. District Court for the Eastern District of Tennessee. She brought claims against both defendants under 42 U.S.C. § 1983 for violations of her constitutional rights to be free from excessive force and false imprisonment and under Tennessee law for false imprisonment, negligence, and assault. All the claims were based solely on Lt. Jones tasing Ms. Erwin.

In May 2019, Ms. Erwin passed away due to causes unrelated to this litigation, and Mr. Erwin continued this action on behalf of his mother's estate. After discovery, the defendants moved in April 2020 for summary judgment, which the district court granted in full. On appeal, the Estate argues that the district court erred on all counts except its negligence claim, which it has abandoned, and that it is entitled to punitive damages.

## II.

### A. STANDARD OF REVIEW

We review grants of summary judgment de novo, viewing all facts and related inferences "in the light most favorable to the non-moving party." *Stewart v. City of Euclid*, 970 F.3d 667, 672 (6th Cir. 2020). Summary judgment is proper when "'no genuine dispute as to any material fact' exists and the moving party 'is entitled to judgment as a matter of law.'" *Wright v. City of Euclid*, 962 F.3d 852, 864 (6th Cir. 2020) (quoting Fed. R. Civ. P. 56(a)).

### B. SECTION 1983 EXCESSIVE FORCE CLAIM AGAINST LT. JONES

The Estate contends that Lt. Jones is liable pursuant to § 1983 for violating Ms. Erwin's constitutional right to be free from excessive force. Lt. Jones disputes that his actions constituted

excessive force and additionally invokes a defense of qualified immunity. To defeat this defense, the Estate must demonstrate both "(1) [that Jones]'s conduct violated a constitutional right, and (2) [that] that right was clearly established at the time of the events," *Stewart*, 970 F.3d at 672. *See Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002) (highlighting that the plaintiff bears the ultimate burden of showing that the defendant is not entitled to qualified immunity).

The Fourth Amendment protects the right to be free from unreasonable seizure, including "the right to be free from excessive force." *Thomas v. City of Columbus*, 854 F.3d 361, 365 (6th Cir. 2017). Objective reasonableness, as determined from the "totality of the circumstances," *Stewart*, 970 F.3d at 672, "governs whether an officer's force was excessive," *Thomas*, 854 F.3d at 365 (citing *Graham v. Connor*, 490 U.S. 386, 388 (1989)).

In *Graham*, "[t]he Supreme Court . . . articulated three factors for us to consider in determining the objective reasonableness of a particular use of force." *Roell v. Hamilton Cty., Ohio/Hamilton Cty. Bd. of Cty. Comm'rs*, 870 F.3d 471, 480 (6th Cir. 2017). The factors are: "[1] the severity of the crime at issue, [2] whether the [claimant] poses an immediate threat to the safety of the officers or others, and [3] whether [she] is actively resisting arrest or attempting to evade arrest by flight." *Stewart*, 970 F.3d at 672 (quoting *Graham*, 490 U.S. at 396). These three "important considerations," *id.*, are not exhaustive, *see Estate of Hill v. Miracle*, 853 F.3d 306, 314 (6th Cir. 2017). Additionally, in this analysis we must remember that "[p]olice officers routinely face 'tense, uncertain, and rapidly evolving' situations that force split-second judgments about the degree of force required." *Reich v. City of Elizabethtown*, 945 F.3d 968, 978 (6th Cir. 2019) (quoting *Graham*, 490 U.S. at 396–97).[1]

---

[1] On appeal, the Estate additionally argues that a heightened standard applies to uses of *deadly* force and that the district court erred in considering the tasing non-lethal. But the Estate itself characterized the tasing as "non-lethal" before the district court. (Mem. in Support of Pl.'s Resp. to Defs.'s Mot. for Summ. J., R. 43, PageID 214). It has thus forfeited this argument on appeal. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008).

Here, considering the totality of the circumstances, including the three *Graham* factors, Lt. Jones' tasing of Ms. Erwin was objectively reasonable and did not violate the Fourth Amendment. We thus need not address the second prong of the qualified immunity analysis, whether Lt. Jones' actions were contrary to clearly established law. *See, e.g.*, *Chappell v. City of Cleveland*, 585 F.3d 901, 916 & n.2 (6th Cir. 2009).

#### a. Assessment of the Graham factors

The first and third *Graham* factors—the severity of the plaintiff's crime and whether she was resisting arrest—weigh in the Estate's favor. *See Kent v. Oakland Cty.*, 810 F.3d 384, 390–91 (6th Cir. 2016). As the defendants concede, Lt. Jones did not come to Ms. Erwin's home because she was suspected of having committed a crime, and she was not "resisting" or "evad[ing]" an attempted arrest when Lt. Jones tased her, *Graham*, 490 U.S. at 396. *See Goodwin v. City of Painesville*, 781 F.3d 314, 319, 323, 326 (6th Cir. 2015).

Nevertheless, the second *Graham* factor—whether Ms. Erwin posed an immediate threat to the officers—heavily favors Lt. Jones. The following relevant facts are undisputed: Lt. Jones was responding to a call about a combative person who had been swinging a broom toward places where she believed imaginary intruders were located. After Lt. Jones exited his vehicle, Ms. Erwin "walk[ed] with intent" towards him (Jones Depo., R 35-6, PageID 148), steadily advancing with a five-foot long bow rake in her hands. As she approached Lt. Jones, Ms. Erwin began holding the rake with both hands in what he described as "an offensive posture" (Jones Depo., R. 35-6, PageID 151) and yelled at him to get off her property. Ms. Erwin then expressly rejected Lt. Jones' commands that she stop advancing. When she was just ten to twelve feet away, Lt. Jones perceived her to be an imminent threat of harm and tased her. This perception was objectively reasonable.

The Estate's attempts to minimize the threat that Ms. Erwin posed are not persuasive. To begin, Mr. Erwin's own account of the few seconds he witnessed before the tasing entirely corroborates Lt. Jones'; Mr. Erwin stated that his mother was "brandishing the rake" and "cussing" at Lt. Jones and that "[t]he tasing was what stopped her." (*See* Erwin Depo., R. 35-5, PageID 130–31, 136.) The Estate makes the conclusory assertion that the manner in which Ms. Erwin was holding the rake before she was tased is a disputed fact for the jury to decide. But the Estate identifies no dispute about the material facts at issue: as she approached Lt. Jones, Ms. Erwin was holding the rake across her body, with the metal end pointed towards him. The district court correctly characterized this posture as, "carrying it in a manner that would suggest that she was intending to strike him with it." (Mem. Op. and Order, R. 59, PageID 419.)

The Estate further argues that Ms. Erwin did not lunge, swing, or run at Lt. Jones. If Ms. Erwin had done so, it would certainly make Lt. Jones' use of force more reasonable. But his conclusion that Ms. Erwin posed an imminent "*threat*" of harm to him, *Graham*, 490 U.S. at 396 (emphasis added), was reasonable based on the undisputed facts outlined above, including her posture in holding the rake. Contrary to the Estate's contention, the situation here is thus entirely different from the one we addressed in *Lopez v. City of Cleveland*, 625 F. App'x 742 (6th Cir. 2015). In *Lopez*, we denied summary judgment to officers because there was a genuine question as to whether the decedent, who was holding a machete, raised the weapon or made any movements towards a nearby family member. 625 F. App'x at 745–47. Here, Ms. Erwin's hold on the rake and her movement towards Lt. Jones are undisputed.

The Estate additionally emphasizes that Ms. Erwin was elderly and slight. But, as the Estate's counsel conceded at oral argument, nothing in the record indicates that Ms. Erwin was not capable of swinging or thrusting the rake. Mr. Erwin himself acknowledged his mother's relative

vitality in his deposition. When asked if his mother had any "physical disabilities," he answered, "None. She was as healthy as you could be for her age. I mean, the way she was out there running around, there's no doubt." (Erwin Depo., R. 35-5, PageID 135.) Whether done carefully or haphazardly, just one strike of those metal tines could have injured Lt. Jones.

Finally, the Estate highlights that—in the circumstances of this case—a reasonable officer would have realized that Ms. Erwin was mentally unwell. In this situation, however, her mental instability in no way diminished the objective threat of harm she posed. *See Rucinski v. County of Oakland*, 655 F. App'x 338, 342 (6th Cir. 2016) ("[Plaintiff] identifies no case law restricting an officer's ability to use deadly force when she has probable cause to believe that a mentally ill person poses an imminent threat of serious physical harm to her person[.]").

### b. *Objective reasonableness of the use of force*

Given the threat of imminent harm that Ms. Erwin posed to Lt. Jones, his decision to use non-lethal force to stop her advance was objectively reasonable. We have previously "found tasing reasonable where individuals were particularly violent or physically resistant, so as to endanger responders." *Kent*, 810 F.3d at 391. Even so where the claimants were *unarmed*. *See, e.g.*, *Rudlaff v. Gillespie*, 791 F.3d 638, 640, 643 (6th Cir. 2015). Moreover, where a person advances towards officers wielding a weapon, we have repeatedly concluded that *deadly* force is permissible, even in wellness check situations. In *Reich v. City of Elizabethtown*, for instance, we found it was not excessive for officers to shoot a decedent who was undergoing a schizophrenic breakdown when he disregarded commands to drop his knife, taunted officers, and made advances towards them. *See* 945 F.3d at 973–75, 979–81; *see also Rucinski*, 655 F. App'x at 340–43. Similarly, in *Hanson v. City of Fairview Park* we suggested that if the decedent had threatened officers with a raised golf club shooting him would have been objectively reasonable. *See* 349 F. App'x 70, 76 (6th Cir.

2009). If threatening officers with a knife or golf club can justify deadly force, then Ms. Erwin's aggressive advance with a metal bow rake justified tasing.

The Estate argues that Lt. Jones could have nonetheless evaded Ms. Erwin or wrested the rake from her grasp. But the confrontation happened at night on the edge of the road. Though Jones might conceivably have avoided using force by backing into the road, attempting to reenter his vehicle, or turning his back to Ms. Erwin to jog around in the dark, it was not unreasonable—as a "split-second" judgment, *Reich*, 945 F.3d at 978—for him to conclude that these options also would have left him exposed to potential harm. The Fourth Amendment does not require that officers expose themselves to a plausible risk of bodily injury to avoid using non-deadly force against an armed assailant, much less to grapple with them for control of the weapon. *Cf. Reich*, 945 F.3d at 982 (officers need not wait to be within striking range of an assailant to deploy force).

Lt. Jones is thus entitled to summary judgment on the Estate's § 1983 claim for excessive force.

### C. REMAINING CLAIMS

None of the Estate's remaining claims against either defendant are availing.

#### a. *False imprisonment claims against Lt. Jones*

The Estate claims that Lt. Jones falsely imprisoned Ms. Erwin by tasing her, which it argues violated her federal constitutional rights. But the Estate does not articulate how this purported false imprisonment contravenes the Constitution, focusing instead on Tennessee tort law principles. Its false imprisonment claim under § 1983 claim is thus waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (alteration in original)).

The Estate's second claim for false imprisonment against Lt. Jones under Tennessee tort law fails as well. To succeed on a false imprisonment claim, the Estate must prove "(1) the detention or restraint of one against his will and (2) the unlawfulness of such detention or restraint." *See Coffee v. Peterbuilt of Nashville, Inc.*, 795 S.W.2d 656, 659 (Tenn. 1990). According to the Estate, Lt. Jones' restraint of Ms. Erwin was unlawful because he did not have probable cause to seize her. We disagree.

The record amply supports concluding that Lt. Jones had probable cause under Tennessee law to arrest Ms. Erwin at the moment he deployed his taser. In Tennessee, probable cause exists when "the facts and circumstances within the knowledge of the officers . . . are sufficient to warrant a prudent person in believing that the defendant had committed or was committing an offense." *State v. Reynolds*, 504 S.W.3d 283, 301 (Tenn. 2016) (quoting *State v. Echols*, 382 S.W.3d 266, 277–78 (Tenn. 2012)). It is a "purely objective" inquiry; "the officer's subjective state of mind is irrelevant." *Id.* Assault is a criminal offense in Tennessee, comprising "[i]ntentionally or knowingly caus[ing] another to reasonably fear imminent bodily injury." *See* Tenn. Code Ann. § 39-13-101(a)(2). As discussed above, Lt. Jones reasonably perceived that, in the moments before he tased Ms. Erwin, she posed an imminent threat to cause him bodily injury. Thus, regardless of whether Lt. Jones subjectively intended to arrest her in that moment, the objective threat she posed provided probable cause for him to seize her. *See Reynolds*, 504 S.W.3d at 301. The Estate's only stated grounds for concluding that Lt. Jones' restraint of Ms. Erwin was unlawful therefore fails.

### b. *Common-law assault claim against Lt. Jones*

The Estate also asserts a state-law assault claim against Lt. Jones. We have previously noted, however, that "[w]here a plaintiff asserts a battery claim under Tennessee law that arises

out of the same use of force as her § 1983 excessive-force claim, the analysis is the same for both causes of action." *Griffin v. Hardrick*, 604 F.3d 949, 956 (6th Cir. 2010); *accord Stafford v. Jackson Cty.*, No. M2016-01883-COA-R3-CV, 2017 Tenn. App. LEXIS 528, at *10 (Tenn. Ct. App. Aug. 4, 2017). In *Griffin*, we thus found that the failure of the plaintiff's § 1983 excessive force claim doomed her common-law battery claim. *Griffin*, 604 F.3d at 957. The same holds here. Granted, the Estate's claim against Lt. Jones is framed as one for *assault*, which does not require proof of harmful contact, rather than for battery, which does. *Compare* Tenn. Pattern Instrs. Civil 8.01 (Lexis 2021) (assault), *with id.* 8.02 (battery). But the Estate rests its assault claim expressly and solely on Lt. Jones' tasing of Ms. Erwin. And if under *Griffin*'s logic Lt. Jones is not liable for actually tasing Ms. Erwin (battery), nor is he for an "intentional attempt" or the "unmistakable appearance of an intentional attempt," *see id.* 8.01, to tase her (assault).

### c. Section 1983 failure-to-train claim against Greene County

The Estate contends that Greene County is liable under *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), for failing to train Lt. Jones adequately. But municipal liability under *Monell* requires an underlying constitutional violation by a municipal employee. *Baker v. City of Trenton*, 936 F.3d 523, 535 (6th Cir. 2019). Thus, without viable constitutional claims for excessive force or false imprisonment against Lt. Jones, the Estate's corresponding municipal liability claims against the County necessarily fail as well. *Id.*

### d. Common-law assault and false imprisonment claims against Greene County

Likewise, the district court was correct to dismiss the Estate's state-law claims against Greene County on grounds that Tennessee's sovereign immunity precludes it. Under the Tennessee Governmental Tort Liability Act (TGTLA), plaintiffs may sue state entities for injuries caused by a state employee's negligence within the scope of their employment. *See* Tenn. Code

Ann. § 29-20-205; *Johnson v. City of Memphis*, 617 F.3d 864, 871–72 (6th Cir. 2010). Claims for certain injuries, however, are expressly excluded from this waiver of sovereign immunity, including ones where the "injury arises out of . . . civil rights." Tenn. Code Ann. § 29-20-205; *see Johnson*, 617 F.3d at 872. We recognized in *Johnson* that, under Tennessee law, when the state tort claim "arises out of the same circumstances giving rise to [plaintiff's] civil rights claim under § 1983," the tort claim "falls within the exception listed in § 29-20-205" and the government entity retains sovereign immunity against it. *Johnson*, 617 F.3d at 872. Likewise here, the Estate's assault and false-imprisonment allegations against the County stem from exactly the same facts as its civil rights claims under § 1983, namely, Lt. Jones' tasing of Ms. Erwin. Greene County's sovereign immunity thus bars them.

### e. Punitive damages

Lastly, the Estate argues that it is entitled to punitive damages on its non-TGTLA claims and that the appropriate amount of these damages remains a disputed fact. But because none of the Estate's claims against the defendants is availing, its arguments regarding punitive damages are moot. *See Unger v. City of Mentor*, 387 F. App'x 589, 593 (6th Cir. 2010).

## III.

For the foregoing reasons we affirm the district court's grant of summary judgment to the defendants on all claims.