**Wanda Holcomb EPPS, et al.,
Plaintiffs–Appellants,**

v.

**LAUDERDALE COUNTY, TEN-
NESSEE, et al., Defen-
dants–Appellees.**

No. 00–6737.

United States Court of Appeals,
Sixth Circuit.

Aug. 13, 2002.

Cole, Circuit Judge, concurred in a separate opinion.

Before KRUPANSKY and COLE, Circuit Judges; DUGGAN,* District Judge.

PER CURIAM.

Plaintiffs-appellants Wanda Epps, Paul Webb, Karen Webb, Edie Wilson, and Billy Holcomb (collectively "plaintiffs")[1] have challenged the district court's award of summary judgment to the defendants in their civil rights action. Appellants have contended that specific aspects of the high-speed chase involved in their case remove it from the purview of the Supreme Court's decision in *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998).

---

* The Honorable Patrick J. Duggan, United States District Judge for the Eastern District of Michigan, sitting by designation.

1. Billy Holcomb has joined this action as next friend of Timmy Holcomb and Lindsey Hol-

comb, his children, who were traveling in the plaintiffs' car when it was struck. Billy Holcomb was not traveling in the plaintiffs' car during the events in question.

Plaintiffs have alleged that on the night of May 8, 1999, an officer of the Covington Police Department ("CPD") encountered a vehicle speeding north on U.S. Highway 51. While the officer was issuing a citation to the driver, he drove away. A high-speed pursuit followed. The CPD dispatcher relayed the identity of the driver to the officer directly involved. The dispatcher also notified the Lauderdale County dispatcher that the driver was heading into Lauderdale County. The Lauderdale County dispatcher then informed officers of the Ripley Police Department ("RPD"), who then proceeded to the intersection of Highway 371 and Cooper's Creek Road. The CPD officer discontinued his pursuit when the errant driver entered Lauderdale County.

The RPD officers encountered the driver proceeding within the speed limit at the intersection of Highway 371 and Cooper's Creek Road. When they attempted a traffic stop, the driver accelerated and another high-speed pursuit ensued. The RPD officers pursued the driver in their unmarked Suburban, which was equipped with a siren. The speeding driver and the RPD officers ignored a stop sign at the intersection of Highway 87 and Highway 371, a two-lane road. Other RPD patrol cars attempted a rolling roadblock, which was unsuccessful, which prompted the driver to enter the lane designed for oncoming traffic.

As the plaintiffs, who were traveling eastbound on Highway 371, attempted to effect a left turn into a driveway, they were struck in the rear by the errant driver's vehicle. Epps, Webb and Timmy Holcomb were ejected from the vehicle and suffered severe injuries. Lindsey Holcomb was killed.

On May 5, 2000, plaintiffs instituted the instant action in federal court, primarily charging the Lauderdale County Sheriff's Department, the City of Ripley, Tennessee and the various individual police officers involved in the chase with violating their substantive due process right to be free from arbitrary government action so outrageous as to shock the conscience.[2] On June 9, 2000, the defendants moved to dismiss the instant case on the basis that the officers' actions complied with the Supreme Court's decision in *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998), which concluded that liability for injuries caused by a high speed pursuit arises pursuant to the substantive due process doctrine only when the officers intend to "harm the suspects physically or to worsen their legal plight." *Id.* at 854, 118 S.Ct. 1708. The plaintiffs argued before the district court that because they were not suspects and the RPD officers acted deliberately in initiating high-speed pursuit, the stringent *Lewis* standard should not apply. Instead, the plaintiffs suggested a deliberate indifference standard.

On November 8, 2000, in a well-reasoned opinion, the district court rejected the plaintiffs' argument to ignore *Lewis* and dismissed the federal charges with prejudice:[3]

> High-speed pursuits, by their very nature, do not permit the deliberation required to apply the "deliberate indifference" standard. When executive action is the result of unhurried judgment, the chance for repeated reflection, and uncomplicated by the pulls of competing obligations, then deliberate indifference is truly shocking. Categorically, howev-

---

2. In addition, the plaintiffs advanced a state law negligence claim.

3. The district court dismissed the state law claims without prejudice to refiling them in state court.

er, the nature of high-speed pursuits-their ever evolving nature, the number of contingencies, the scant information available, the high pressure environment, the absence of hindsight or second chances, and the abbreviated time period in which to make decisions -requires that the Court apply the *Lewis* standard to all high speed pursuit scenarios.

In addition, the district court dismissed the municipal liability claims pursuant to *Heller v. City of Los Angeles,* 475 U.S. 796, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986), because, as related above, the individual liability claims were without merit and, therefore, no underlying constitutional violation existed for which the municipality could be held responsible. On December 5, 2000, the plaintiffs timely appealed.

This court has carefully reviewed the materials contained in the Joint Appendix and the arguments presented in the briefs of counsel submitted by the parties and concludes that the district court's judgment was correct as a matter of law. This reviewing court therefore adopts the district court's opinion entered November 8, 2000.

Accordingly, the judgment of the district court is AFFIRMED.

R. GUY COLE, Jr., Circuit Judge, concurring.

I concur with the majority that this high speed pursuit is governed by *County of Sacramento v. Lewis,* 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998), and that Appellants fail to allege facts sufficient to establish individual officer liability for injuries pursuant to the substantive due process doctrine. I also agree that no municipal liability exists in the present case. I write separately, however, to clarify my understanding of *City of Los Angeles v. Heller,* 475 U.S. 796, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986) (per curiam), that a

municipality may still be held liable for a substantive due process violation even when the individual officer is absolved of liability.

When no constitutional harm has been inflicted upon a victim, damages may not be awarded against a municipality. *Heller,* 475 U.S. at 799, 106 S.Ct. 1571. But a finding that the individual government actor has not committed a constitutional violation does not require a finding that no constitutional harm has been inflicted upon the victim, nor that the municipality is not responsible for that constitutional harm. *See City of Canton v. Harris,* 489 U.S. 378, 388–89 n. 8, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (noting that the deliberate indifference standard for municipal liability is independent from the state of mind standard used to establish the liability of an individual government actor); *see also Collins v. City of Harker Heights, Texas,* 503 U.S. 115, 121–22, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992) (highlighting the "separate character of the inquiry into the question of municipal responsibility and the question whether a constitutional violation occurred."). I read *Heller* to prohibit municipal liability only when the victim suffers no constitutional injury at all, not when the victim fails to trace that constitutional injury to an individual police officer. *Cf., e.g., Claybrook v. Birchwell,* 199 F.3d 350, 361 (6th Cir.2000) (citing the language of *Heller* to deny a victim's substantive due process claim, but not addressing the case where the victim actually did suffer a constitutional injury).

A given constitutional violation may be attributable to a municipality's acts alone and not to those of its employees—as when a government actor in good faith follows a faulty municipal policy. *See Pembaur v. City of Cincinnati,* 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); *Dodd v. City of Norwich,* 827 F.2d 1, 9 (2d Cir.

1987) (Pratt, J., dissenting) (noting that the city's policy could be unreasonable, "even if [the individual government actor] himself, who was trained to follow that policy, was found to be not negligent in his own conduct."). A municipality also may be liable even when the individual government actor is exonerated, including where municipal liability is based on the actions of individual government actors other than those who are named as parties. *See Proprotnik v. City of St. Louis,* 798 F.2d 1168 (8th Cir.1986), *rev'd on other grounds,* 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988); *de Feliciano v. de Jesus,* 873 F.2d 447 (1st Cir.1989); *Carapellucci v. Town of Winchester,* 707 F.Supp. 611 (D.Mass. 1989). Moreover, it is possible that no one individual government actor may violate a victim's constitutional rights, but that the "combined acts or omissions of several employees acting under a governmental policy or custom may violate an individual's constitutional rights." *Garcia v. Salt Lake County,* 768 F.2d 303, 310 (10th Cir.1985).

For these reasons, I concur in affirming the district court's dismissal.