**Anne Marie JOHNSON, et al.**

v.

**Joseph MONTMINY, et al.**

**No. CIV. JFM–02–2822.**

United States District Court,
D. Maryland.

Sept. 23, 2003.

Douglas P. Desjardins, R. Jack Clapp and Associates Co. LPA, Lawrence Noel Patterson, Jr., Washington, DC, for Plaintiffs.

Roger Lee Fink, County Commissioners of Charles County MD, La Plata, MD, John F. Breads, Jr., Local Government Insurance Trust, Columbia, MD, Betty Stemley Sconion, Maryland State Police Headquarters, Office of the Attorney General Legal Counsel Unit, Pikesville, MD, for Defendants.

## OPINION

MOTZ, District Judge.

This case arises from a tragic accident that occurred on August 25, 1999. Joseph Johnson (the plaintiffs' decedent) was killed when his automobile was struck from behind by a vehicle driven by David Glenn Hicks, who was driving at a high rate of speed. This action is brought against Charles County, several deputy sheriffs of Charles County, and a Maryland state police officer [1], who plaintiffs allege violated Johnson's constitutional rights.

Voluminous discovery has been taken in a related action brought in the Circuit Court for Charles County by plaintiffs and by Gloria Colburn, a person injured in the same incident.[2] Based upon the evidentiary record established by that discovery and supplemental affidavits, defendants have filed a motion to dismiss or for summary judgment.[3] The motion will be granted.

---

1. There are nine individual defendants. Three of these defendants—Corporal Donald Belfield, Police Officer I John A. Burroughs, and Corporal Joseph Gibson—were involved in the incident only prior to the events at the intersection of Route 301 and Smallwood Drive described in this opinion. Four of the defendants—Sergeant Michael McGuigan, Private First Class William Donley, Police Officer I Donald Raby, and Trooper First Class Thomas Ford—were involved in the events at the intersection. Two of the defendants—Captain Joseph Montminy and Sheriff Frederick E. Davis—are named as defendants only in their supervisory capacities. The latter two defendants, like the remaining defendant, the Board of County Commissioners for Charles County, Maryland, are entitled to summary judgment not only for the reasons discussed in the text but also because plaintiffs have come forward with no evidence to support supervisory or governmental liability.

2. The state court action, in which common law tort claims are asserted, remains pending.

3. One of the defendants, Thomas Ford (who is a trooper with the Maryland State Police and represented by different counsel than the Charles County defendants), has not filed a summary judgment motion. However, it is clear from the record that Ford stands in the same legal position as the other defendants and, like them, is entitled to summary judgment. Therefore, I will *sua sponte* enter summary judgment on his behalf. As a result, I need not decide a limitations issue he has raised.

## I.

## A.

At approximately 8:54 on the morning of August 25, 1999, a Maryland Transportation Authority police officer observed a green sports utility vehicle driven by a person subsequently identified as David Glenn Hicks traveling northbound in the southbound lanes of Interstate Route 301 at a speed of approximately 60 miles per hour. The officer then observed the vehicle pass through the toll plaza of the Governor Harry W. Nice Bridge in the wrong direction at a high rate of speed.

Over the course of the next seventeen minutes the suspect vehicle was observed by numerous police officers traveling northward on Route 301 at speeds estimated to be as high as 100 miles per hour. The suspect vehicle sometimes passed other vehicles by traveling on the grass median or switching into the southbound lane or by swerving back into the northbound lanes. On at least one occasion an officer saw the suspect vehicle pass other cars by traveling on the shoulder at a high rate of speed. Several of the officers gave chase to the suspect vehicle but terminated their efforts after being unable to overtake it. Another officer was unsuccessful in his attempts to use what are known as "stop sticks" to halt the vehicle.

The crash that resulted in the death of Joseph Johnson (and the injuries to Gloria Colburn) occurred at the intersection of Route 301 and Smallwood Drive. According to the evidence presented by defendants, Sergeant Michael McGuigan, after hearing dispatches concerning the progress of Hicks' vehicle up Route 301, drove his vehicle (with emergency equipment activated) to the 301/Smallwood Drive intersection. According to Sergeant McGuigan, as he reached the intersection, the traffic signal on westbound Smallwood Drive turned from red to green. Sergeant McGuigan states that he drove his vehicle into the center of the intersection, passed all northbound lanes and stopped toward the turn lanes from southbound Route 301. Shortly after McGuigan arrived, Trooper Ford of the Maryland State Police came to the scene and positioned his car adjacent to, and to the right of, Sergeant McGuigan's vehicle. An effect of the placement of Sergeant McGuigan's vehicle was to prevent traffic from eastbound Smallwood Drive (which had a green light) from entering the intersection. Another vehicle (of which Donald Raby, a probationary police officer, was the driver and in which Private First Class William Donley was the passenger), came to the scene and, with its emergency equipment activated, was positioned in front of, and perpendicular to, traffic on westbound Smallwood Drive. Officer Donley directed Officer Raby to place the vehicle in this manner to prevent westbound traffic on Smallwood Drive, which also now had a green light, from entering the intersection.

At 9:11:02, the radio dispatcher advised Sergeant McGuigan that the suspect vehicle was in the median of Route 301. Sergeant McGuigan scanned the travel lanes of Route 301, and he saw the emergency lights of a police car in the distance in the northbound lanes. He also saw that there were approximately ten cars in the northbound lanes of Route 301 stopped for the red light at the intersection of Route 301 and Smallwood Drive. Sergeant McGuigan got out of his car, picked up stop sticks from the trunk, and ran toward the northbound lanes of Route 301. For the first time he saw the suspect vehicle approaching the cars stopped in the northbound lanes at a high rate of speed.

The shoulder of northbound Route 301 was unobstructed, and Sergeant McGuigan guessed that the suspect vehicle would either turn eastward on Smallwood Drive or proceed north using the shoulder. There-

fore, he ran towards the shoulder, planning to place his stop sticks there. While he was running, Sergeant McGuigan heard the loud impact of the suspect vehicle colliding with cars stopped for the signal. The vehicle became airborne, and passed directly over Sergeant McGuigan's head. It landed in the center of the northbound side of the intersection. Hicks eventually was extracted from the vehicle by Officer Donley and Officer Raby. Other officers assisted the victims of the crash.

#### B.

Plaintiffs do not dispute the facts as presented by defendants up until the events occurring at the intersection of Route 301 and Smallwood Drive. As to the latter events, based solely upon the testimony of Gloria Colburn, plaintiffs aver that the police officers did not place their vehicles at the locations described by defendants but instead positioned all three vehicles across the northbound lanes of Route 301, preventing the cars stopped at the intersection from moving forward.

#### II.

■ Plaintiffs assert two different constitutional claims: one for a violation of due process, the other for an unreasonable seizure within the meaning of the Fourth Amendment. Two different standards appear to apply to these different claims. A "shock the conscience" test governs the due process claim, *see County of Sacramento v. Lewis,* 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998), while the Fourth Amendment claim requires proof that the officers intentionally terminated a

person's freedom of movement and that their conduct was constitutionally unreasonable. *See Brower v. Inyo County,* 489 U.S. 593, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989).[4] Although these tests have been articulated in cases where the plaintiff is the person whom the police were pursuing, they apply with equal force to cases involving innocent bystanders. *See, e.g., Onossian v. Block,* 175 F.3d 1169 (9th Cir.1999); *Epps v. Lauderdale County, Tennessee,* 45 Fed.Appx. 332, 2002 WL 1869434.

■ In the present case, nothing that the police officers did is shocking to the conscience. They were confronted with a dangerous and volatile situation created by Hicks' driving a vehicle at excessive speed, erratically, and without regard to the safety of anyone else on the road. The officers had not done anything to create the situation but rather were simply reacting to it. In that regard in *County of Sacramento* the Court noted that the police "had done nothing to cause Willard's [the driver] high-speed driving in the first place." 523 U.S. at 855, 118 S.Ct. at 1721. The Court went on to say that

> "Willard's outrageous behavior was practically instantaneous, and so was Smith's [one of the police officers] instinctive response. While prudence would have repressed the reaction, the officer's instinct was to do his job as a law enforcement officer, not to induce Willard's lawlessness, or to terrorize, cause harm, or kill. Prudence, that is, was subject to countervailing enforcement considerations, and while Smith exaggerated their demands, there is no

**4.** Arguably, *County of Sacramento* has eclipsed *Brower,* and a "shock the conscience" test applies to all claims arising from a high-speed pursuit. *See Epps v. Lauderdale County, Tennessee,* 45 Fed.Appx. 332, 333–34, 2002 WL 1869434, at *2 (6th Cir.2002). However, in *County of Sacramento* the Court specifically noted that under the facts present-

ed (which did not include any alleged barricade) no seizure within the meaning of the Fourth Amendment had occurred. 523 U.S. at 843–44, 118 S.Ct.at 1715–16. Therefore, I will assume that *Brower* continues to control cases in which Fourth Amendment seizure is alleged.

reason to believe that they were tainted by an improper or malicious motive on his part." *Id.*

Here, the officers did not even "exaggerate the demands of law enforcement considerations," and prudence would not have counseled them to do anything other than what they did. There is nothing in the record to suggest that Hicks was driving the way he was because of anything any police officer had done or was doing. He was observed speeding and traveling in the wrong lane of traffic before any police officer had confronted him, and there is no evidence suggesting that he drove either faster or more erratically after the police first observed him and tried to stop his vehicle.

■ Likewise, the activities of the police officers at the intersection of Route 301 and Smallwood Drive, where plaintiffs allege that a Fourth Amendment violation occurred, neither shock the conscience nor constituted an unreasonable seizure. Defendants have presented evidence establishing (and plaintiffs have presented no evidence disputing) that the shoulder on northbound Route 301 was unobstructed at the time of the crash. Indeed, Sergeant McGuigan was moving toward that shoulder because he thought that the shoulder was one of the two channels through which Hicks would drive to avoid colliding with the vehicles stopped at the intersection. Thus, the evidence is uncontroverted that the officers were not attempting to stop Hicks' freedom of movement, and the plaintiffs cannot rely upon a theory that the officers intended to seize him.[5]

■ Similarly, the evidence forecloses plaintiffs from relying upon a theory that the defendants seized Johnson and the other persons in vehicles stopped at the intersection. The only basis for this contention is the testimony of Ms. Colburn who has testified that the officers positioned three vehicles across the northbound lanes of Route 301 as a "barricade." Ms. Colburn's testimony is contradicted not only by the testimony of all of the other officers, but also by a photograph taken at the scene immediately after the crash showing Trooper Ford's vehicle sitting not across the northbound lanes of Route 301, but near the middle of the intersection along the center of the intersection where he says he placed it. Moreover, Ms. Colburn herself testified that "by the time I got to the light, the light had changed to red," Colburn deposition at 17, and she further testified that she never saw it turn green. *Id.* at 55. This evidence is "so one-sided" in establishing that it was a red light, not a police barricade, that impeded the movement of traffic at the intersection that it entitles defendants to summary judgment. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 268, 106 S.Ct. 2505, 2520, 91 L.Ed.2d 202 (1986).

Moreover, even if it is assumed that there is a genuine dispute as to whether police officers had lined their vehicles across the northbound lanes of Route 301 to stop traffic, there is no evidence to suggest that the action was constitutionally unreasonable. In *Brower,* it was alleged that the defendants had "(1) caused an 18–wheel tractor-trailer to be placed across

---

**5.** Even if plaintiffs had presented evidence that the shoulder of Route 301 was obstructed (which they have not), that fact alone would not prevent defendants from being entitled to summary judgment. In order to withstand summary judgment, plaintiffs would have to present evidence establishing (or giving rise to a reasonable inference) that *the officers knew that the shoulder was obstructed.* This is

so because plaintiffs have the burden of proving that the officers intended to terminate Hicks' freedom of movement (or, to the extent that plaintiffs' theory is that the officers intended to terminate their decedent's freedom of movement, that they intentionally created a barricade which they knew Hicks could not avoid).

both lanes of a two-lane highway in the path of Brower's flight, (2) 'effectively concealed' this roadblock by placing it behind a curve and leaving it unilluminated, and (3) positioned a police car, with its headlights on, between Brower's oncoming vehicle and the truck, so that Brower would be 'blinded' on his approach." 489 U.S. at 594, 109 S.Ct. at 1380. Nothing of the sort is alleged in this case. Rather, even if Ms. Colburn's testimony is to be credited, at worst the officers kept the vehicles at the Route 301/Smallwood Drive intersection from moving forward while intending to leave a channel for Hicks to travel on the northbound shoulder (on which they planned to place stop sticks). In light of the fact that throughout his frightening northbound journey on Route 301, Hicks had avoided other vehicles whenever he came to them (at least on one occasion by driving on a shoulder), the officers could reasonably infer (to the extent they had time to reflect) that he would do so again.

In short, nothing in the record supports an inference that the officers were intentionally and unreasonably seizing either Hicks or the persons in the vehicles at the Route 301/Smallwood Drive intersection. Rather, they simply were attempting to create a situation in which stop sticks could be effectively placed so as to protect all of the northbound traffic on Route 301.[6]

A separate order effecting the rulings made in this memorandum is being entered herewith.

### ORDER

For the reasons stated in the accompanying memorandum, it is, this 23rd day of September 2003

### ORDERED

1. The motion to dismiss or for summary judgment filed by the Board of County Commissioners for Charles County, Maryland, et al. is treated as one for summary judgment and, as such, is granted; and

2. Judgment is entered in favor of all defendants against plaintiffs.

---

**6.** It follows *a fortiori* from my holding that plaintiffs' claims fail on the merits that defendants would also be entitled to qualified immunity as to those claims. I further note, however, that even if I have erred in ruling in favor of defendants on the merits of plaintiffs' claims, defendants nevertheless would be entitled to qualified immunity because, in light of the *County of Sacramento* and *Brower* decisions, they did not violate any clearly established constitutional right by their conduct.