NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0350n.06

No. 23-3818

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**

Aug 09, 2024

KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| DEARREA KING, | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE SOUTHERN |
| CITY OF COLUMBUS, OHIO; BRYAN C. | ) | DISTRICT OF OHIO |
| MASON, | ) | |
| Defendants-Appellees. | ) | OPINION |

Before: SUTTON, Chief Judge; CLAY, and BUSH, Circuit Judges.

JOHN K. BUSH, Circuit Judge. City of Columbus Officer Bryan Mason shot and killed thirteen-year-old Tyre King while responding to an armed robbery. Dearrea King, King's grandmother, sued Mason and the City under 42 U.S.C. § 1983. She claimed that Defendants violated King's rights under the Fourth and Fourteenth Amendments of the United States Constitution, as well as under state law. The district court granted Defendants' motion for summary judgment as to the City, but denied the motion with respect to Plaintiff's claims against Mason. A jury ultimately awarded judgment in Mason's favor, crediting his testimony that he used deadly force because he believed King was going to shoot him. Plaintiff appeals the district court's denial of her motions for judgment notwithstanding the verdict and, in the alternative, a new trial, and its grant of summary judgment to the City. For reasons that follow, we affirm.

**I.**

Mason and Officer Robert Reffitt heard reports of an armed robbery on the evening of September 14, 2016. The report indicated that seven to eight individuals participated, including a "male black, [with] baggy pants, and [a] dark sweatshirt." According to Demetrius Braxton's later testimony, he robbed Michael Ames for gas money, using a BB gun that belonged to King and, according to Ames's testimony, looked like a real gun. Braxton gave the gun back to King after the robbery, and King put the gun in his pants.

Reffitt parked the cruiser near the crime scene, as he and Mason hoped to "box in anyone that[] [was] fleeing the area." Mason drew his firearm as he ran westbound down the street. He saw Braxton and King running northbound; he yelled at them to get down. Braxton immediately complied.

King's response to Mason's commands, on the other hand, is disputed. Mason testified that King ran northeast, toward the front of a parked car. Mason saw the gun tucked into King's waistband as King fled. King stopped near the front of the car and turned toward Mason, "stutter stepping in a continued effort to try to elude law enforcement." Mason Test., R. 243, PageID 9000, 9054. As Mason yelled at King to get down, King "reached down and grabbed the hand grip of the firearm that was in his waistband and began tugging forcefully on that gun, three, four, five times." *Id.* at PageID 9001. According to Mason, King drew the gun up to his torso. Although King never pointed the gun directly at Mason, Mason believed that King drew the gun to shoot him. Mason fired his gun three times in response: one shot struck King's head, another his left shoulder, and a third his abdomen. Five to eight seconds passed from Mason's first encounter with Braxton and King to the shooting.

At trial, Plaintiff presented evidence to argue that King was fleeing, not facing Mason, when he was shot. Plaintiff's biomechanical expert, Jeremy Bauer, testified that based on the order and angle of the bullets striking King and the position of King's body, there was a "very likely situation here that [King's] head was facing away from [Mason] when he was struck in the head." Bauer Test., R. 241, PageID 8621, 8633. Testimony from several eyewitnesses also suggested that King was fleeing: Sister Anna Skora, who lived nearby, testified that King was "only running away" when confronted by Mason, but that he "stood up straight" when Mason shot him. Skora Dep., R. 126-1, PageID 1445–46. Braxton claimed that King was running away and did not reach for a gun when he was shot. And eyewitness William Scott testified that from where he stood, it looked like Mason's last two shots struck King's back.

When Mason shot King, the BB gun fell to the ground and landed in front of a parked car. Mason handcuffed King and Reffitt radioed for a medic. While looking near the car where King fell, Mason learned that King had been holding a BB gun. Braxton testified that after the shooting, Mason said that Braxton and King should have stopped, and that the officer used a racial slur against them. Mason denied saying those things.

The City's Critical Incident Response Team (CIRT) investigated Mason's conduct. After finding that eyewitness testimony corroborated Mason's statements, the CIRT concluded that Mason did not act criminally when he shot King. Sergeant Eric Pilya, team leader of the CIRT, explained that the team evaluates the reasonableness of an officer's actions by considering "what that specific officer knew at the time they pulled the trigger," and whether, in light of those circumstances, "another reasonable officer [would] do the same." Pilya Dep., R. 141-1, PageID 3290.

## A. Procedural Background

Plaintiff sued Mason and the City of Columbus under 42 U.S.C. § 1983. She alleged that Mason violated King's right to be free from excessive force under the Fourth and Fourteenth Amendments, and that he discriminated against King in violation of the Fourteenth Amendment's Equal Protection Clause.[1] She also alleged a wrongful death claim under Ohio Rev. Code § 2125.01. Finally, she brought a claim against the City under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), alleging that its policies and practices caused King's constitutional injury.

Defendants moved for summary judgment on all claims. The district court granted summary judgment to the City on Plaintiff's *Monell* claim, explaining that King failed to establish that any custom or policy led to the violation of King's constitutional rights. But the court denied summary judgment on the Fourth Amendment claim because it found that disputes of fact existed as to whether Mason or others in the area "were threatened with serious bodily injury" when Mason shot King. Order on Mot. for Summ. J., R. 150, PageID 4851. The court similarly denied the motion with respect to King's Equal Protection claim, explaining that "[i]f the jury credits King's evidence [that Mason used a racial slur after shooting King], it could reasonably infer (or not infer) that Mason's shooting of King was motivated by racial animus." *Id.* at PageID 4855–56. Mason appealed, but another panel of this court dismissed the appeal for lack of jurisdiction, explaining that it could not review the district court's denial of qualified immunity because Mason did not concede King's version of the facts. *King v. City of Columbus*, No. 21-3725, 2022 WL 2812888 (6th Cir. July 19, 2022).

---

[1] Plaintiff also alleged a deliberate indifference claim under the Fourteenth Amendment. She voluntarily dismissed that claim in response to Defendants' motion for summary judgment.

The trial lasted seven days. During trial, Plaintiff dismissed her Equal Protection claim and chose to proceed on only a reckless theory of liability for her state-law claim. Both parties moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a), and the district court denied both motions. The jury returned a verdict for Mason on all remaining counts. The district court denied Plaintiff's motion for judgment notwithstanding the verdict or, in the alternative, a new trial, under Rules 50(b) and 59, respectively. Plaintiff timely appealed.

**II.**

**A. Judgment Notwithstanding the Verdict**

Plaintiff first challenges the denial of her motion for judgment notwithstanding the verdict on her Fourth Amendment and state-law claims against Mason. A party who loses at trial and unsuccessfully sought judgment as a matter of law under Federal Rule of Civil Procedure 50(a) may renew her motion for judgment notwithstanding the verdict under Rule 50(b). The motion should be granted if the court, having drawn all reasonable inferences in favor of the nonmoving party, finds that "a reasonable jury [did] not have a legally sufficient evidentiary basis to find" in favor of the nonmoving party. Fed. R. Civ. P. 50(a)(1); *Mosby-Meachem v. Memphis Light, Gas & Water Div.*, 883 F.3d 595, 602 (6th Cir. 2018). We do "not weigh the evidence, evaluate the credibility of the witnesses, or substitute our judgment for that of the jury" when ruling on a Rule 50(b) motion. *Wehr v. Ryan's Family Steak Houses, Inc.*, 49 F.3d 1150, 1152 (6th Cir. 1995). We review a district court's denial of a motion for judgment notwithstanding the verdict de novo. *McKenna v. Edgell*, 617 F.3d 432, 437 (6th Cir. 2010).

Plaintiff argues that a jury could not reasonably find that Mason's use of force complied with the Fourth Amendment because King did not pose a threat when he was shot. The Fourth Amendment guarantees the right to be free from unreasonable searches and seizures. U.S. Const.

amend. IV.  To evaluate an officer's use of force under the Fourth Amendment, we ask "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989).  In applying this fact-specific inquiry, we consider, among other things, "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.  And we give deference to an officer's "on-the-spot judgment about the level of force necessary in light of the circumstances." *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2022).

Sufficient evidence supports the jury's conclusion that Mason's use of force was objectively reasonable.  The first *Graham* factor—the severity of the crime—weighs in Mason's favor because Mason was responding to an armed robbery when he encountered King, which the parties do not dispute.  *See Thornton v. City of Columbus*, 727 F. App'x 829, 837 (6th Cir. 2018) (finding that use of deadly force was justified in part because officers were responding to a "report of a man threatening others with a gun").  And Mason reasonably believed that King and Braxton were involved in that robbery when he saw them running near the scene of the crime.

The remaining *Graham* factors also weigh in Mason's favor because sufficient evidence supports finding that Mason reasonably believed he was responding to a "deadly threat."  Mason Test., R. 243, PageID 9004.  The parties agree that, unlike Braxton, King did not comply with Mason's repeated commands to "get down."  Mason Test., R. 243, PageID 8998.  Instead, Mason testified that King turned to face him and tugged on the gun in his waistband multiple times, causing Mason to believe that King "was drawing a firearm to shoot [him]." *Id.* at PageID 9001–02.  Although Mason later discovered that the weapon was a toy gun, he—and Ames, the victim of the robbery—believed the gun was real.  The fact that only five to eight seconds passed between

Mason's initial encounter with King and the shooting further supports the conclusion that Mason's "split-second judgment[]," made during a "rapidly evolving" situation, was reasonable. *Graham*, 490 U.S. at 397.

Viewing the evidence in a light favorable to Mason, a jury could find that his response was reasonable because King resisted arrest and posed an immediate threat to his safety. *See Thornton*, 727 F. App'x at 831 (holding that officers' use of deadly force was justified where the plaintiff was "looking right at [the officers], ignored their commands, did not drop the shotgun, and instead continued to walk towards the Officers"); *Thomas v. City of Columbus*, 854 F.3d 361, 365–66 (6th Cir. 2017) (finding no Fourth Amendment violation where officer "responded to a dangerous call in a high-crime area" and saw a person "r[u]n towards him . . . with a gun").

Plaintiff argues that Mason's use of force was not justified because King "never pointed the BB gun at Mason and only pointed it downward." Appellant Br. at 8. But Mason "did not have to wait for [King] to raise his weapon before employing deadly force." *Thornton*, 727 F. App'x at 838; *Thomas*, 854 F.3d at 366 (rejecting a "categorical rule that force can only be reasonable if a suspect raises his gun"). And Plaintiff's claim that no evidence indicated that King posed a threat is belied by Mason's testimony that King tugged at the gun several times and drew it above his torso, which suggested that he intended to shoot.

Plaintiff also contends that Mason should have taken cover behind a nearby parked car, and that his failure to do so renders his response unreasonable as a matter of law. But we have rejected that argument before, as it "rel[ies] on the hindsight bias that we guard against" when evaluating the constitutionality of a use of force. *Thomas*, 854 F.3d at 366 (holding that officer responding to a burglary was not required to issue a warning or wait to see if the person "running towards him with a gun would point it at him"). That Mason could have sought cover does not

mean that the jury had an insufficient basis to find in his favor. We affirm the district court's denial of the Rule 50(b) motion.

## B. New Trial

Plaintiff next appeals the district court's denial of her motion for a new trial. A new trial is warranted under Federal Rule of Civil Procedure 59(a) "when a jury has reached a seriously erroneous result as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, *i.e.*, the proceedings being influenced by prejudice or bias." *Holmes v. City of Massillon*, 78 F.3d 1041, 1045–46 (6th Cir. 1996) (internal quotation marks and citation omitted). We review the district court's ruling for an abuse of discretion. *Id.* at 1045.

### 1. Manifest Weight of the Evidence

Plaintiff first requests a new trial because the weight of the evidence supports finding that Mason's use of force was unconstitutional. In granting a motion for a new trial on this basis, a district court "must compare the opposing proofs, weigh the evidence, and set aside the verdict if it is of the opinion that the verdict is against the clear weight of the evidence." *J.C. Wyckoff & Assocs., Inc. v. Standard Fire Ins. Co.*, 936 F.2d 1474, 1487 (6th Cir. 1991). The court should not order a new trial "simply because different inferences and conclusions could have been drawn," and should deny the motion "if the verdict is one which could reasonably have been reached." *Id.*

Plaintiff claims that the evidence at trial proved that King was fleeing when Mason shot him, so Mason's use of deadly force could not have been reasonable. In support, she cites testimony from Bauer on the order of the shots and testimony regarding the angle of King's body as he fell. She claims that evidence is corroborated by testimony from Sister Skora, Braxton, and Scott that King was running or facing away from Mason when he was shot. *Id.* at 18.

But Plaintiff overstates the weight of the evidence supporting her position. Order on Mot. for New Trial, R. 247, PageID 9491–94. She claims it is "undisputed" that the first shot to strike King was the head shot, but neither Bauer nor Defendants' expert admitted to knowing the exact order of the shots with certainty. Appellant Br. at 16; *See* Bauer Test., R. 241, PageID 8621, 8667; Noedel Test., R. 246, PageID 9289. And even if the head shot was first, it does not necessarily follow that King was fleeing at the time Mason shot him; as the district court explained, "[w]hile [King's] head may not have been facing Officer Mason, his body may have been." Order on Mot. for New Trial, R. 247, PageID 9491.

The eyewitness testimony Plaintiff cites similarly did not require the jury to conclude that King was fleeing. Sister Skora stated that King did not "try to shoot" at Mason because he was running away, but that when Mason shot him, "[King] was straight. He stood up. He stood up straight." Skora Dep., R. 126-1, PageID 1445–46. And the jury had reason to discredit the testimony from the other two witnesses: Braxton undermined his claim that King was running away by admitting that he lied to police the night of the shooting, and that he could not clearly see whether King pulled out a gun. And Scott's claim that the last two shots "went in [King's] back" was contradicted by both parties' experts. Scott Test., R. 242, PageID 8704. Plaintiff's evidence thus did not conclusively establish that King was turned away from Mason when he was shot. And even if it did, the jury was not required to infer from that evidence that Mason was fleeing. The district court properly rejected Plaintiff's claim.

## 2. Jury Instructions

Plaintiff next claims that she is entitled to a new trial because the jury instruction on her state-law wrongful death claim was erroneous. We do not "vacate a jury verdict based on . . . improper jury instructions unless the . . . instructions amounted to more than harmless error."

*Kendel v. Local 17-A United Food & Com. Workers*, 512 F. App'x 472, 479 (6th Cir. 2013) (internal quotation marks and citation omitted). Under that standard, an erroneous instruction requires reversal when the court "lacks a 'fair assurance' that the outcome of a trial was not affected by [the] error." *Id.* (quoting *Beck v. Haik*, 377 F.3d 624, 635 (6th Cir. 2004), *overruled on other grounds by Adkins v. Wolever*, 554 F.3d 650 (6th Cir. 2009) (en banc)).

In addition to her Fourth Amendment claim, Plaintiff brought a wrongful death claim under Ohio Rev. Code § 2125.01. Ohio law grants police officers immunity from tort liability for actions within the scope of their employment, unless the actions were taken "with malicious purpose, in bad faith, or in a wanton or reckless manner." Ohio Rev. Code § 2744.03(A)(6)(b). At trial, Plaintiff elected to proceed only on the theory that Mason could not receive statutory immunity because his conduct was reckless. Consistent with that theory, the jury instructions explained that Mason "is entitled to immunity on the wrongful death claim unless Ms. King proved that he acted in a reckless manner." Jury Instr., R. 231, PageID 7215. The district court also instructed the jury that if it "decide[d] [Mason's] actions were objectively reasonable, then [it] must find that he did not act recklessly." *Id.*

Plaintiff claims that the instruction misstates the law because it fails to distinguish recklessness from reasonableness, and that the error was prejudicial because it prevented the jury from independently considering her state-law claim. She explains that an "officer's state of mind is irrelevant to the Fourth Amendment [reasonableness] standard," but that the recklessness standard "can be satisfied based on objective *or* subjective evidence." Appellant Br. at 21. As applied here, she contends that even if the jury found that Mason's actions were reasonable, it could have found that his actions were reckless from evidence that he used a racial slur after the shooting. *Id.* at 21–22. She also notes that whether an officer "acted recklessly in creating the

circumstances which required the use of deadly force" does not factor into a reasonableness analysis, but that under a recklessness standard, an officer can be held liable for "recklessly creating dangerous circumstances." *Id.* at 22 (quoting *Livermore ex rel. Rohm v. Lubelan*, 476 F.3d 397 (6th Cir. 2007)).

The jury instruction on Plaintiff's wrongful death claim accurately represented the law. We have repeatedly recognized that where an officer acts reasonably under the Fourth Amendment, his conduct cannot have been reckless under Ohio law. *See Pollard v. City of Columbus*, 780 F.3d 395, 404 (6th Cir. 2015) (holding that because officers "were objectively reasonable in shooting [the decedent]" under the Fourth Amendment, "it logically follows that they could not have been reckless in shooting [him]"); *Sabo v. City of Mentor*, 657 F.3d 332, 337 (6th Cir. 2011) (same). Ohio courts recognize the same conjunctive test: finding that an officer acted unreasonably is a necessary prerequisite to finding that his conduct was reckless. *See, e.g., Jordan v. Howard*, No. 29190, 2021 WL 5275974, at *13 (Ohio Ct. App. Nov. 12, 2021) (holding that, because officers' use of deadly force was reasonable, "it would be factually and logically inconsistent to conclude in this action that the officers were reckless in causing [the decedent's] death").

We recently rejected Plaintiff's attempts to differentiate between the two standards in *Cooper v. City of Columbus*, No. 22-3251, 2023 WL 1434055, at *8–9 (6th Cir. Feb. 1, 2023), in which we recognized that where officers act reasonably for purposes of federal qualified immunity, they are necessarily immune from corresponding Ohio tort claims. *Id.* at *9. We noted that whether the officers "'escalated' the situation" did not affect our conclusion, as "no rational juror could conclude [the officers'] actions displayed 'conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially

greater than negligent conduct.'" *Id.* (quoting *Downard for Est. of Downard v. Martin*, 968 F.3d 594, 602 (6th Cir. 2020)).

Plaintiff fails to explain why the above cases are not controlling. Accordingly, if Mason's conduct was reasonable, his actions cannot have been reckless, and the district court properly instructed the jury to that effect.

### 3. Evidentiary Errors

Plaintiff claims that she is entitled to a new trial because five of the district court's erroneous evidentiary rulings prejudiced the outcome of her case. We review a district court's evidentiary rulings for an abuse of discretion. *Kendel*, 512 F. App'x at 479. To order a new trial on this basis, the moving party must show that an evidentiary decision was erroneous and that the error prejudiced her substantial rights. *Beck*, 377 F.3d at 634.

### a. Cover and Communicate Theory

Plaintiff challenges the district court's exclusion of expert testimony that Mason could have taken cover when he encountered King. King sought to introduce testimony from Melvin L. Tucker, a former Chief of Police who testified that Mason could have "avoid[ed] the use of deadly force" if he had "[sought] a position of concealment and cover" when he encountered King. The district court excluded the evidence in limine because Tucker's opinions were irrelevant under Federal Rule of Evidence 401 and unduly prejudicial under Rule 403. Plaintiff claims the evidence is relevant to (1) her Fourth Amendment claim, by demonstrating that "a reasonable officer would have sought cover or attempted to communicate with [King]" rather than resorting to deadly force; and (2) her state-law claim, by showing that Mason's failure to take cover "recklessly created a deadly confrontation." Appellant Br. at 27.

Under Rule 401, "[e]vidence is relevant if it has 'any tendency' to make a fact that is of consequence in determining the action more or less probable than it would be without the evidence." *Ayers v. City of Cleveland*, 773 F.3d 161, 169 (6th Cir. 2014) (citation omitted). A court may nonetheless exclude relevant evidence under Rule 403 "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury . . . or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

The district court did not err in excluding testimony regarding the cover and communication theory because the evidence was irrelevant. The "only relevant question" with respect to Plaintiff's Fourth Amendment claim was "whether the force used to effect [the seizure] was reasonable in the totality of the circumstances, not whether it was reasonable for the police to create the circumstances." Order on Mots. in Limine, R. 223, PageID 7151 (alteration in original) (quoting *Livermore*, 476 F.3d at 406).[2] And even if the possibility of taking cover was relevant to show recklessness, excluding Tucker's opinions was harmless error because the testimony would not have impacted the jury's determination that Mason's conduct was objectively reasonable.

---

[2] To the extent that Plaintiff sought to argue that Mason acted unreasonably by failing to take cover just before he shot King, this may have been relevant. We have held that "[s]ometimes, the time or space available to an officer may mean that the reasonable thing to do is to monitor the suspect, issue a warning, or take cover." *Thomas*, 854 F.3d at 366–67. But Plaintiff never clearly presented this cover theory to the district court. Moreover, at trial, Plaintiff's police practice expert testified that Mason would have had time to move laterally before the shooting, and the jury was instructed that it should consider whether Mason made "[a]ny efforts . . . to temper the severity of a forceful response" in assessing whether the use of force against King was reasonable. Jury Instr., R. 231, Page ID #7211. Thus, the district court substantially permitted testimony about and instructed the jury to consider whether Mason should have taken cover or moved before shooting King. Any further exclusion of this theory was harmless.

### b. Mason's Prior Uses of Force

Plaintiff next claims that the district court erred in excluding Mason's prior uses of force. Defendants moved to exclude Mason's record of using force, including his "three previous uses of deadly force and 47 reports involving force," as inadmissible character evidence under Federal Rule of Evidence 404(b)(1). Mason's Mot. in Limine, R. 193, PageID 6254. The district court, expressing doubt as to whether Mason's past uses of force—for which he was never disciplined— constitute "bad acts" under Rule 404(b)(1), excluded the evidence as irrelevant because it "ha[s] very little relevance to his motive and intent here." Order on Mots. in Limine, R. 223, PageID 7158.

Rule 404(b) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, a court may admit evidence of prior acts "for another purpose," including to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* 404(b)(2); *see United States v. Hardy*, 643 F.3d 143, 150 (6th Cir. 2011).

Plaintiff claims that the evidence may be admitted for two non-propensity purposes: to show (1) Mason's state of mind when he shot King, and (2) that he did not mistakenly believe that King posed a threat. Although Mason's state of mind is not relevant to his Fourth Amendment excessive force claim, his state of mind is relevant to Plaintiff's Ohio state law claim and request for punitive damages. See *Goodwin v. City of Painesville*, 781 F.3d 314, 334–35 (6th Cir. 2015) (Ohio state law claim); *Smith v. Wade*, 461 U.S. 30, 56 (1983) (punitive damages). But, as the district court explained, Mason's past uses of force, in situations involving entirely different facts, are not probative of his motive or intent in shooting King. *See United States v. Haywood*, 280

F.3d 715, 722 (6th Cir. 2002). And the evidence was not probative to show an absence of mistake because Mason did not claim that he accidentally shot King. *See Eldridge v. City of Warren*, 655 F. App'x 345, 348–49 (6th Cir. 2016) (rejecting claim that prior acts evidence is admissible to show officers' absence of mistake because the officers did "not claim that they accidentally used force," and one officer admitted to "intentionally deploy[ing]" his taser). Plaintiff did not establish any non-propensity reason for admitting the past incidents involving force, so excluding the evidence was proper.

### c. Post-Incident Reassignment

Plaintiff next claims that the court erred in excluding evidence that Mason was reassigned into a narcotics detective unit after King's death. She contends that the evidence suggests that his conduct was unreasonable by "refut[ing] the evidence offered by Mason that his use of force . . . complied with City of Columbus policies." Appellant Br. at 31. But as the district court properly found, Mason's subsequent reassignment is irrelevant to the question before the jury: "whether, at the moment that Mason shot King, his use of deadly force was objectively reasonable." Order on Mots. in Limine, R. 223, PageID 7159 (quoting Defs.' Mot. in Limine, R. 193, PageID 6251); *see Goodwin v. Richland Cnty.*, 832 F. App'x 354, 358 (6th Cir. 2020) (holding that evidence of the "internal investigation that was conducted after the shooting sheds no light on 'the facts and circumstances confronting' [the officer] when he shot [the decedent]") (quoting *Graham*, 490 U.S. at 397).

### d. Mason's DNA Sample

Plaintiff next argues that Mason should have been permitted to testify as to whether he submitted a DNA sample for the investigation into King's shooting. Bauer testified that for King's gun to land approximately six feet away from his body, where police found it, King would have

needed to toss the gun. But no witnesses said that they saw King toss the gun, and Mason testified that he looked for the gun while handcuffing King because he did not see where the gun landed. Plaintiff argued at trial that a jury could reasonably infer from that evidence that Mason moved the gun away from King after the shooting—a fact that, if true, would undermine Mason's credibility as a witness.

To support her theory, Plaintiff's counsel asked Mason if he was "asked to provide a DNA sample for any purposes of the investigation" of the shooting. Mason Test., R. 243, PageID 9071. Counsel sought to discover whether Mason's sample matched the DNA of the two "unidentified males" found on the gun. *Id.* at PageID 9072–73. But the court refused to permit that line of questioning, explaining that the testimony had no probative value because the gun's location was not investigated, Plaintiff's theory that Mason had moved the gun was unsupported by the evidence, and "there [was] no dispute that [Mason] had the gun" after he handcuffed King. *Id.* ; Trial Tr. Vol. 5, R. 246, PageID 9445–46.

The district court's ruling was not an abuse of discretion. "[T]he mosaic of evidence that comprises the record before a jury includes both the evidence *and* the lack of evidence on material matters." *United States v. Poindexter*, 942 F.2d 354, 360 (6th Cir. 1991). But, for the lack of evidence to be admissible, it must be related to a material question. *See Dortch v. Fowler*, 588 F.3d 396, 401 (6th Cir. 2009) (holding that the results of an investigation yielding no corroborating evidence would be relevant, whereas if no investigation was conducted, the lack of corroboration evidence would "support neither party"); *see generally McKay v. Federspiel*, 823 F.3d 862, 866 (6th Cir. 2016) (noting that a fact is "material" if it "might affect the outcome of the suit under the governing law" (quotation omitted)).

Here, the lack of evidence comparing Mason's DNA to the DNA found on the gun is irrelevant to any material matter. The location of the gun was not the subject of an investigation, so whether Mason submitted his DNA is not relevant to any question that would affect the outcome of the case. Moreover, because Mason admitted that he possessed King's gun after the shooting, whether his DNA was found on the gun did not support Plaintiff's impeachment theory and excluding that question did not impact the outcome of the trial.

### e. Testimony from Ames

Plaintiff claims that the district court erroneously admitted testimony from Ames. At trial, Plaintiff argued that discussion of the robbery should be limited to the facts that Mason knew when he encountered King. The district court expressed concern that the trial would become about the robbery, but held that Ames could provide limited testimony to "describe the robbery, what the gun appeared to be like to him, and his call to 911." Trial Tr. Vol. 3, R. 242, PageID 8882.

The district court properly limited Ames's testimony to counter disputed facts and provide relevant context. Although Plaintiff claimed that she conceded the facts of the robbery, Plaintiff's counsel suggested that Mason did not know that King and Braxton were suspects and that Mason could have known that King's BB gun was a toy. Ames's testimony provided relevant context to explain King's involvement in the robbery, how King obtained the gun from Braxton, and whether the gun looked real. *Cf. United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000) (holding that "background evidence" is admissible where it "arises from the same events as the charged offense . . . or completes the story of the charged offense"). And the district court appropriately exercised its discretion throughout the trial to ensure that testimony about the robbery was not cumulative. Plaintiff did not identify any evidentiary error warranting a new trial, so the district court's denial of her motion was proper.

### C. Summary Judgment

Plaintiff next claims that the district court erred in granting summary judgment to the City on her municipal liability claim. We review a district court's grant of summary judgment de novo. *Helphenstine v. Lewis Cnty.*, 60 F.4th 305, 314 (6th Cir. 2023). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts "must view all the evidence and draw all reasonable inferences in the light most favorable to the non-moving party." *Rhinehart v. Scutt*, 894 F.3d 721, 735 (6th Cir. 2018) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

To prevail on her § 1983 municipality claim, Plaintiff must show (1) a constitutional injury that (2) was caused by the City's policy or practice. *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (citing *Monell*, 436 U.S. at 694). To establish a policy or practice, we look to "(1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Id.*

Defendants argue that the City cannot be liable under *Monell* because the jury found that Mason's actions did not violate the Fourth Amendment. We have held that "where there has been no showing of individual constitutional violations on the part of the officers involved, there can be no municipal liability." *Baker v. City of Trenton*, 936 F.3d 523, 535 (6th Cir. 2019); *Pollard*, 780 F.3d at 401 (same); *see also Heller v. City of Los Angeles*, 475 U.S. 796, 799 (1986) (per curiam) (dismissing *Monell* claim after the jury returned a verdict in favor of a police officer on an excessive force claim, explaining that whether the City's regulations "might have authorized the use of constitutionally excessive force is quite beside the point" absent a showing of individual

liability). *But see Grote v. Kenton Cnty.*, 85 F.4th 397, 414 (6th Cir. 2023) (holding that a municipality may be liable "where constitutional harm has nonetheless 'been inflicted upon the victim' and the municipality is responsible for that harm." (quoting *Epps v. Lauderdale Cnty.*, 45 F. App'x 332, 334 (6th Cir. 2002) (Cole, J., concurring)).

Regardless of whether Plaintiff established that a constitutional violation occurred, we affirm the district court's grant of summary judgment to the City because Plaintiff failed to establish a genuine dispute of material fact with respect to any theory of *Monell* liability.

### 1. Official Policy or Custom

Plaintiff first contends that the City's official policies regarding the use of force caused King's harm. To establish municipal liability under this theory, a plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (internal citation and quotation marks omitted). A plaintiff may rely on a written policy, or a "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (internal citation and quotation marks omitted).

Plaintiff claims that under the City's policies, officers are permitted "to use deadly force if they experience subjective fear and if they are confronted with a speculative, instead of an imminent threat."[3] She cites testimony from Pilya, who she claims stated that an officer may use deadly force when he has only a subjective fear of harm, or in the face of speculative harm. *Id.* at

---

[3] Appellant Br. at 37. As another policy, Plaintiff claims that the City trains its officers to "shoot when a suspect has their hand on a weapon or when they merely reach in the direction of a weapon." *Id.* at 38. This bears on the adequacy of the City's training, so will be considered with respect to Plaintiff's failure-to-train claim.

38 (citing Pilya Dep., R. 141-1, PageID 3290). But when read in context, Pilya's testimony does not establish a policy of permitting the unlawful use of force. When asked whether the lawfulness of an officer's conduct depends on "what the officer thought at the time" or "what a reasonable officer would have thought," Pilya answered that both considerations are considered. Pilya Dep. R. 141-1, PageID 3290. He further explained that an officer's response is deemed valid, in part, if "another reasonable officer [would] do the same." *Id.* That testimony is insufficient to establish an official policy of evaluating officer conduct on a subjective basis alone.

### 2. Ratification

Plaintiff next argues that the City ratified Mason's conduct by failing to properly investigate claims that he used excessive force, both here and in prior cases. A ratification claim "'based on inadequate investigation' requires 'not only an inadequate investigation in this instance,' but also 'a clear and persistent pattern of violations' in earlier instances." *Pineda v. Hamilton Cnty.*, 977 F.3d 483, 495 (6th Cir. 2020) (quoting *David v. City of Bellevue*, 706 F. App'x 847, 853 (6th Cir. 2017)). To show a pattern of inadequate investigations, the plaintiff must point to "multiple earlier inadequate investigations . . . concern[ing] comparable claims." *Stewart v. City of Memphis*, 788 F. App'x 341, 344 (6th Cir. 2019).

Plaintiff claims that the investigation into King's shooting was inadequate because the City applied its unlawful use-of-force policy to determine that Mason's conduct was reasonable. Plaintiff also cites the City's investigation of Mason's non-fatal shooting of Gary Williams in 2013 as proof that it condoned Mason's unlawful behavior. Plaintiff claims the Williams investigation was inadequate because Mason admitted that he shot at a suspect who did not point a weapon at anyone, so his conduct could not have been reasonable. The existence of one prior investigation is insufficient to establish a pattern of earlier violations involving comparable claims. *Compare*

*Stewart*, 788 F. App'x at 345 (holding that evidence of one earlier, "vaguely remembered . . . incident" involving different facts is insufficient to demonstrate a pattern of inadequate investigation), *with Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1247 (6th Cir. 1989) (finding pattern of violations where County failed to adequately investigate 14 similar claims over a two-year period).

Additionally, Plaintiff failed to explain how the City's investigation into Williams's case was inadequate. As the jury found in King's case, an officer may shoot at a suspect who does not point a firearm at anyone, provided that other circumstances justify the use of deadly force. For example, in Williams's case, Mason testified that the suspect was "quickly crawling toward his gun" when Mason fired, so that Mason believed he "was going to pick [the gun] up and shoot at [him]." Mason Statement, R. 141-14, PageID 4575. Plaintiff has not established ratification merely by pointing to the City's finding that Mason acted reasonably here—a conclusion with which the jury agreed—and to a similar finding in one related case.

### 3. Failure to Train

Plaintiff next claims that the City failed to train its officers on the constitutional use of deadly force. "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). To succeed on this theory, she must show that "(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006). Deliberate indifference under the second prong may be established by showing that the municipality "fail[ed] to equip law

enforcement officers with specific tools to handle recurring situations." *Ouza v. City of Dearborn Heights*, 969 F.3d 265, 287 (6th Cir. 2020) (internal citations and quotation marks omitted).

Plaintiff claims that the obvious inadequacy of the City's training proves that it is deliberately indifferent to the "rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388–89 (1989). In support of her claim, Plaintiff cites slides from a 2007 PowerPoint that labels victims of crime as sheep, police as sheepdogs, and suspected criminals as wolves who "[p]ray [sic] on the weak and defenseless." Defensive Tactics Unit (DTU) Training 2007, R. 141-8, PageID 3991–99. She claims that the PowerPoint trains officers to "dehumanize suspects" and "assume that they are violent," which encourages the officers to use force unnecessarily. Appellant Br. at 45. She also argues that the City trains officers to shoot when a suspect merely reaches for a weapon, and before an actual threat of harm has materialized. *Id.* at 38, 46.

The training materials Plaintiff cites are insufficient support for her failure-to-train claim. As the district court explained, new hires receive over 1,000 hours of training, including instruction on the proper use of lethal force. The slides that Plaintiff criticizes do not prove that the City's training is obviously lacking. The comparison of criminal suspects to wolves, while inappropriate, does not prove deliberate indifference, particularly considering that other slides train officers on when to use lethal force and encourage officers to avoid the use of force where possible.

And testimony that officers are trained to respond to a threat of harm does not render the City's training constitutionally ineffective. Officers are trained to consider the "totality of the circumstances" to determine whether they are at risk of serious harm, which can include warning signs such as a suspect reaching for a gun. Shaw Dep., R. 141-2, PageID 3515. That training is consistent with the Fourth Amendment and does not subject the City to *Monell* liability.

### 4. Custom of Tolerance

Finally, Plaintiff claims that the City's custom of tolerating its officers' use of excessive force caused King's injury. To establish municipal liability based on a custom of tolerating constitutional violations, Plaintiff must show "(1) the existence of a clear and persistent pattern of [excessive force by City police officers]; (2) notice or constructive notice on the part of the [City]; (3) the [City's] tacit approval of the unconstitutional conduct, such that [its] deliberate indifference in [its] failure to act can be said to amount to an official policy of inaction; and (4) that the [City's] custom was the 'moving force' or direct causal link in the constitutional deprivation." *Doe v. Claiborne Cnty.*, 103 F.3d 495, 508 (6th Cir. 1996).

In support of this theory, Plaintiff cites three situations in which she claims the City tolerated its officers' use of excessive force: (1) Mason's shooting of King, (2) Mason's shooting of Williams, and (3) Officer Keith Abel's shooting of James England. But as with her ratification claim, Plaintiff does not establish a "clear and persistent pattern" of excessive force by pointing to three shooting incidents, one of which is at issue in this case.

Moreover, Plaintiff did not demonstrate that the City exhibited deliberate indifference in its prior investigations. Plaintiff claims that when the City investigates a case involving excessive force, "the statement of the officer . . . [is] assumed to be true . . . [s]o . . . long as [the officer] stated that he feared for his life." Appellant Br. at 49. But Pilya explained that when investigating uses of force, CIRT detectives ensure that an officer's reasons for shooting "match the testimony of the witnesses and the evidence at the scene." Pilya Dep., R. 141-1, PageID 3334. With respect to King's death, detectives considered whether Mason's statement was consistent with statements from witnesses like Braxton and Sister Skora. *Id.* at PageID 3363, 3368. Similarly, Plaintiff did not show that the City's investigation into Abel's shooting, where the officer shot a suspect because

he feared that he could be harmed by the suspect's dogs, was inadequate. The City's finding that Abel's conduct was "out-of-policy" yet did not "raise [sic] to the level of a criminal charge" does not establish a custom of tolerating excessive force, particularly where CIRT detectives interviewed witnesses a second time to clear up conflicting evidence. *Id.* at PageID 3337.

Finally, Plaintiff argues that the fact that no officer has faced criminal charges or been terminated for using excessive force supports finding a custom of tolerance. But even if no officer was terminated, Pilya identified cases where he believed an officer responded unreasonably, and he recalled at least two instances where an officer was disciplined for using excessive force. Pilya Dep., R. 141-1, PageID 3306–07, 3375–76. All told, Plaintiff has not demonstrated that the City's investigative efforts show "an obvious, deliberate indifference" to excessive force claims. *Doe*, 103 F.3d at 508.

## III.

We affirm the judgment of the district court.